IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DOUGLAS TAYLOR DORAN,

**F I L E D**
UNITED STATES DISTRICT COURT
AlBUQUERQUE, NEW MEXICO

Plaintiff

vs.

NOV 2 7 2000

PAUL ROBINSON,

Defendant.

CLERK

CIVIL NO.  00-1505 JP/LFG

## MEMORANDUM OPINION AND ORDER
## GRANTING IN FORMA PAUPERIS APPLICATION,
## BUT DISMISSING COMPLAINT WITHOUT PREJUDICE

THIS MATTER is before the Court on Plaintiff's application to proceed in forma pauperis. Plaintiff, Douglas Taylor Doran ("Doran"), invokes the Court's discretion under 28 U.S.C. § 1915 and seeks the Court's order authorizing him to proceed with this litigation without having to pay costs or fees.

### In Forma Pauperis Application

In enacting the federal in forma pauperis statute, 28 U.S.C. § 1915, Congress "[i]ntended to guarantee that no citizen shall be denied an opportunity to commence, prosecute, or defend an action, civil or criminal, `in any court of the United States' solely because . . . poverty makes it impossible . . . to pay or secure the costs of [litigation]." Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 342, 69 S. Ct. 85, 90 (1948). Under this statute, when a court concludes that an applicant is indigent and cannot prosecute a cause of action due to poverty, the court may waive costs and fees. The court requires a petitioner to file an affidavit disclosing assets and liabilities and demonstrating



an inability to pay.  In accord with the requirements of the statute, Doran submitted an affidavit stating that he is unemployed, has no income of any kind or nature, owns no property and has no assets, but is still responsible for the support of two dependents.  He states that in the absence of the Court's order authorizing a waiver of costs, he could not prosecute his claims.  Based on this affidavit, Doran qualifies as a pauper.  Accordingly, the Court grants Doran's application for in forma pauperis status.

### *Sua Sponte* Review of the Complaint

While Congress removed barriers to court process for indigents by enacting the in forma pauperis statute, Congress also recognized that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits."  Neitzke v. Williams, 490 U.S. 319, 324, 109 S. Ct. 1827, 1831 (1989); Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728 (1992).  In response to this congressional concern, courts are authorized to review and, if necessary, to dismiss an in forma pauperis complaint "if satisfied that the action is frivolous or malicious."  Neitzke, 490 U.S. at 324.

Accordingly, a court is empowered to conduct a *sua sponte* review pursuant to Section 1915 to determine whether the litigant's complaint meets Fed. R. Civ. P. 12(b)(6) standards.  If it is patently obvious that a plaintiff cannot prevail on the facts alleged, the court may dismiss the case. The dismissal should be without prejudice if an appropriate amendment can cure the defect.  If an amendment cannot cure the defect, the dismissal should be with prejudice.  Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

In conducting a *sua sponte* review of a pro se litigant's complaint, the court applies the same legal standards that are applicable to pleadings drafted by counsel, but remains mindful that a pro

se complaint must be liberally construed. <u>Northington v. Jackson,</u> 973 F.2d 1518, 1520-21 (10th Cir.

1992).   It is with these standards in mind that the Court reviews Doran's complaint against the

backdrop of Rule 12(b)(6).

Doran seeks to bring this lawsuit against Paul Robinson ("Robinson"), who is identified as

the President of Sandia National Laboratories ("Sandia Labs").   Doran invokes the Court's

jurisdiction pursuant to 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983.  The first statute invoked, 28

U.S.C. § 1343, vests a district court with original jurisdiction in a civil action brought:

> To redress the deprivation, under color of any State law, statute,
> ordinance, regulation, custom or usage, of any right, privilege or
> immunity secured by the Constitution of the United States or by any
> Act of Congress providing for equal rights of citizens or of all
> persons within the jurisdiction of the United States.

The second statute invoked by Doran, 42 U.S.C. § 1983, authorizes a court to grant relief

when a party's federally protected rights have been violated by a state or local official or other person

who acted under color of state law.   The statute provides,

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress.

As a matter of pleading and proof, a party asserting a claim for relief under Section 1983,

must satisfy two elements.  First, "the plaintiff must allege that some person has deprived him of a

federal right," and, second, "he must allege that the person who has deprived him of that right acted

under color of state or territorial law." <u>Gomez v. Toledo,</u> 446 U.S. 635, 640, 100 S. Ct. 1920, 1923

(1st Cir. 1980).

3

Here, Doran contends that Robinson is employed as the President of the Sandia Labs, and at the time of the claims alleged in this complaint, he was <u>not</u> acting under color of state law. (Complaint, ¶ 2). Thus, a key pleading requirement for a Section 1983 claim, that is, "acting under the color of state law," is lacking in Doran's complaint. This allegation is a requisite element of both pleading and proof. Thus, for this reason alone, the Court could conclude that Doran failed to plead a proper Section 1983 claim.

However, there is more. It appears the thrust of Doran's complaint is that the Sandia Labs are engaged in actions allegedly violating Article 6 of the Treaty on the Non-Proliferation of Nuclear Weapons Treaty, July 1, 1968, 21 U.S.T. 483, 729 U.N.T.S. 161.[1]

Doran cites from a publication identified as <u>Beyond the NPT</u>, a publication apparently authored by George Bunn, with the Lawyers Alliance for World Security. Doran criticizes the non-proliferation treaty in that "it serves to legitimize the possession of nuclear weapons by certain states, and also, for many NGO's [non-governmental organizations], because pursuant to Article IV, it promotes the spread of nuclear power, thus assisting in the development of necessary infrastructure and materials for weapons' programs." (Complaint, p. 3).

Doran contends that his due-process rights, as well as his right to freedom of speech, have been encroached or denied because, "Who, in their right mind, would spend valuable time designing nuclear weapons while millions of people are working hard to un-design them? Nuclear weapons

---

[1]

The Treaty on the Non-Proliferation of Nuclear Weapons is an important multi-lateral effort to control the spread of nuclear weapons. Its primary purpose is to prevent proliferation of nuclear material, thereby inhibiting the transfer of nuclear weapons or weapons-related technology from nuclear weapon nations to non-nuclear weapon nations. There are 178 countries that have signed the original treaty or its extensions. Jon L. Woodard, International Legal Framework Relating to China's Nuclear Exports to Iran: Safeguarding the Transfer of Dual-Use Nuclear Tchnology, 25 N.C.J. Int'l L. & Com. Reg. 359 (Spring 2000).

4

design is catastrophic stupidity." (Complaint, p. 3).

In support of his contentions that the international treaties are being violated by the Sandia

Labs, Doran simply refers the Court to an article written by a staff writer for an Albuquerque

newspaper, who wrote an article allegedly accusing the laboratories of violating provisions of the

Non-Proliferation of Nuclear Weapons Treaty, and Doran contends that he "verified this positively,

by phone a few weeks after the article was published." (Complaint, p. 3).

In his prayer for relief, Doran states,

> I have, as yet, been unable to contact Paul Robinson to ask him what
> he plans to do about this problem.  I would like to talk to him about
> this problem before a federal judge so he can prove, in his own
> words, what values and interests he is believing in now or if their
> [sic] is conflict of interest which seems obvious to me.

(Complaint, p. 3).

Reviewing Doran's complaint in accord with the standards required under Rule 12(b)(6), the

Court is compelled to conclude that Doran's complaint fails to state an actionable claim for relief.

First, to the extent that Doran seeks to complain about lack of enforcement of an international treaty,

he lacks standing.  A treaty is a contract between sovereign nations and is usually enforceable only

by the nations that are parties to the treaty.  Indeed, the Supreme Court stated:

> A treaty is primarily a compact between independent nations.  It
> depends for the enforcement of its provisions on the interest and the
> honor of the governments which are parties to it.  If these fail, its
> infraction becomes the subject of international negotiations and
> reclamations, so as far as the injured party  chooses to seek  redress
> . . . . It is obvious that with all this the judicial courts have nothing
> to do and give no redress.

Edye v. Robertson, 112 U.S. 580, 598, 5 S. Ct. 247, 254 (1884); see also United States v. Li, 206

F.3d 56, 60 (1st Cir. 2000)("treaties do not severally create rights that are privately enforceable in

the federal courts").  It is well established that individuals have no standing to challenge violations of international treaties in the absence of a protest by sovereigns involved."  <u>Matta-Ballesteros v. Henman</u>, 896 F.2d 255, 259 (7th Cir. 1990).  Thus, Doran, as an individual, has no standing to seek enforcement of an international treaty in federal court.

While there are some rare circumstances in which individuals are entitled to enforce terms of an international treaty, those circumstances are not present here.  They arise "only when the treaty expressly or by implication provides for a private right of action."  <u>Columbia Marine Servs., Inc. v. Reffet Ltd.</u>, 861 F.2d 18, 21 (2d Cir. 1988).

In this case, however, Doran fails to demonstrate any treaty provision intended to confer on individuals a right to enforce rights granted by that treaty.  An individual's right to enforce a treaty exists only when the signatory nation's intent to establish an individual right of enforcement is clearly discernable, and the right of enforcement is clearly spelled out in the treaty itself.  <u>Id.</u>  Here, no mention is made of any provision authorizing a citizen, including Doran, to bring an action to enforce a provision or provisions of this international treaty.

Beyond these initial standing concerns, the complaint fails to show how, if at all, Robinson violated Doran's constitutional rights.  Personal participation is an essential allegation in a Section 1983 claim.  <u>Mitchell v. Maynard</u>, 80 F.3d 1433, 1441 (10th Cir. 1996).  *Respondeat superior* does not serve as a basis of liability in Section 1983 litigation.  <u>Rizzo v. Goode,</u> 423 U.S. 362, 376, 96 S. Ct. 598, 606-07 (1976).  Supervisory capacity is not sufficient, by itself, to impose liability.  Rather, a plaintiff must demonstrate the defendant's personal involvement in the constitutional violation, or a plaintiff must allege that the supervisor knew of and acquiesced in the constitutional violation.  Nowhere in Doran's pleading does he demonstrate how, if at all, Robinson is alleged to

6

have violated Doran's constitutionally protected rights, or that Robinson "authorized, supervised or participated" in the constitutional violation.  Snell v. Tunnell, 920 F.2d 673, 700 (10th Cir. 1990).

For these reasons, the Court determines that Doran's complaint fails to past muster under Rule 12(b)(6) standards.  A Rule 12(b)(6) dismissal is generally without prejudice so as to allow the pleader an opportunity to attempt to cure the pleading defects.  Artful pleading, however, will not grant an individual standing to enforce an international treaty unless the pleader is able to demonstrate specific language in the treaty vesting individuals with the authority to enforce treaty provisions, or the presence of other factors that allow a court to determine the countries' intent.  Frolova v. Union of Soviet Socialist Republics, 761 F.2d 370 (7th Cir. 1985).

While re-pleading in an attempt to demonstrate an individual's standing to enforce an international treaty and to bring Doran's complaint within the strictures of 42 U.S.C. § 1983 may be a daunting, if not an impossible, task, the Court will allow him an opportunity to try.  Accordingly, the Court will dismiss Doran's complaint without prejudice.  However, the Court strongly urges Mr. Doran to seek the assistance of legal counsel before filing another action.  In addition, the Court advises Mr. Doran to read FED. R. CIV. P. 11 before filing another action.

Mr. Doran sent a letter dated November 14, 2000 to United States Magistrate Judge Lorenzo F. Garcia along with a "Complaint Seeking Injunction, Preliminary Injunction and Temporary Restraining Order."  Mr. Doran's November 14, 2000 letter has been placed in the Court file and his Complaint Seeking Injunction, Preliminary Injunction and Temporary Restraining Order has been filed and docketed. In view of the dismissal of the complaint, without prejudice, Doran's request for a temporary restraining order or preliminary injunction is moot and will be denied on that ground.

7

IT IS THEREFORE ORDERED THAT:

1.  Plaintiff Douglas Taylor Doran's application for in forma pauperis status is granted; and

2.  Plaintiff Douglas Taylor Doran's Civil Rights Complaint, filed October 26, 2000, is
    dismissed, without prejudice; and

3.  Plaintiff Douglas Taylor Doran's Complaint Seeking Injunction, Preliminary Injunction
    and Temporary Restraining Order is denied as moot.

CHIEF UNITED STATES DISTRICT JUDGE

8